COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Athey and White

MICHAEL KEVIN TRAVIS

v.     Record No. 1302-21-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE CLIFFORD L. ATHEY, JR.
NOVEMBER 22, 2022

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Timothy W. Allen, Judge

(William C. Meyer, II, on brief), for appellant. Appellant
submitting on brief.

(Jason S. Miyares, Attorney General; Susan Brock Wosk, Assistant
Attorney General, on brief), for appellee. Appellee submitting on
brief.

Appellant Michael K. Travis ("Travis") appeals his sentence, following his guilty pleas, to

two counts of distribution of cocaine, distribution of imitation heroin, and distribution of heroin, in

violation of Code § 18.2-248(C), 18.2-248(G), and 18.2-248.[1] Travis asserts that the Pittsylvania

County Circuit Court ("trial court") abused its discretion when it sentenced him to eight years'

incarceration on each distribution conviction, and five years' incarceration on the distribution of

imitation heroin conviction; with all but one year suspended on each conviction. Both parties waive

oral argument on appeal. We affirm the trial court's judgment.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The indictment, trial order, and sentencing order did not contain the subsection for the distribution of heroin charge.

## I. BACKGROUND

Under settled principles, we state the facts in the light most favorable to the Commonwealth, the prevailing party below. *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018). On July 14, 2021, Travis pled guilty to two counts of distribution of cocaine, distribution of heroin, and distribution of imitation heroin. After conducting a colloquy with Travis, the trial court accepted his pleas and convicted him of the charges.

The Commonwealth proffered that this case involved three controlled purchases of illegal narcotics with a confidential informant ("CI") working for the Pittsylvania County Sheriff's Office. Each purchase occurred at the Food Lion at Market Square. Before each purchase, officers searched the CI for contraband. Finding no contraband, the officers gave the CI paper currency to complete the transaction. The officers then drove the CI to the Food Lion and surveilled the scene.

The CI set up a purchase for thirty dollars' worth of crack cocaine from Travis on January 17, 2020. Officers observed the CI approach Travis and exchange thirty dollars for a substance. After the purchase, Investigator Sargent took possession of the substance, which she believed to be crack cocaine, and placed it into evidence. Testing confirmed that the substance was cocaine.

The same CI set up another purchase from Travis for one gram of heroin on January 23, 2020. After searching the CI for contraband and finding none, officers gave him $110 for the transaction and traveled to the Food Lion. The officers observed the CI approach Travis in the parking lot, exchange money for what the CI believed to be heroin and return to the investigators. The officers took possession of the substance, which based on their training and experience, they believed to be heroin and placed it into evidence. Testing revealed that the substance was not a controlled substance.

The CI set up a final buy from Travis on February 4, 2020. After being searched by the officers, who found no contraband, the CI was given $400 to purchase fentanyl and crack cocaine. After the exchange with Travis, the CI turned over the substances to Investigator Sargent who placed them into evidence. Testing revealed that one of the substances was heroin and the other substance was cocaine.

At trial, in support of Travis' guilty pleas, the Commonwealth proffered and the court accepted, without objection, the certificates of analysis into evidence. Travis agreed that the evidence the Commonwealth proffered was accurate, and his counsel noted that Travis would provide more detail about the transactions and his situation at sentencing. After considering the evidence and Travis' pleas, the trial court convicted Travis of two counts of distribution of cocaine, distribution of heroin, and distribution of imitation heroin. At the sentencing hearing on November 4, 2021, the Commonwealth requested restitution in the amount of $540 and submitted the case to the court's discretion.

Travis testified that after he was last released from prison, he had difficulty finding employment and faced a significant financial hardship. Consequently, he resorted to selling drugs to survive. He articulated his desire to participate in a program that provides "life skills, job training, spiritual guidance," and opportunities. He stated that he no longer wanted to be a burden on his parents and emphasized that he would take advantage of whatever chance the court granted him. While incarcerated, Travis had also assisted the police in some of its investigations.

After Travis rested, the Commonwealth submitted the case to the court's discretion as to sentencing. Travis argued that he had been of great assistance to the Danville police in their ongoing investigations and that because he had provided the names of places and people to investigators, he was unlikely to return to selling illegal narcotics. He articulated his desire to be a productive member of the community by staying clean of drugs and earning his own living. He

asked the court to sentence him to a work program. In allocution, Travis apologized for selling drugs and acknowledged that what he had done was wrong. He also reiterated his desire for the court to sentence him to a program which would provide him with life skills.

The trial court reviewed Travis' presentence report and guidelines.[2] Upon his last release, the court noted that Travis had done well for a period by remaining drug free and was only hindered by his unemployment. The court also noted that Travis had taken responsibility by entering guilty pleas and had provided substantial assistance to the Danville police. Consequently, the court found that Travis qualified for a downward modification of his guidelines. As a result, the guideline ranges were reduced to a minimum of two years, seven months, seventeen days and a high point of eight years, seven months. After noting the mitigating circumstances, the court stated that selling narcotics is "terribly harmful to the community." The court subsequently sentenced Travis to eight years' incarceration on each distribution conviction, and five years' incarceration on the distribution of imitation heroin conviction, with all but one year suspended for each conviction. He is to serve an active sentence of four years' incarceration. This appeal followed.

II. ANALYSIS

A. *Standard of Review*

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an

---

[2] The presentencing report guidelines recommended that Travis be incarcerated for five years, three months as a low point and eight years, seven months as a high point, with seven years as the midpoint.

end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

B. *The trial court did not abuse its discretion in its sentencing decision because the trial court properly weighed Travis' mitigating evidence.*

Travis contends that his sentence is "too harsh." He asserts that the facts of his case are unique so the test for whether the trial court abused its discretion must be based on the facts of his case. He argues that this Court should set aside sentences that are plainly wrong just as we set aside convictions that are plainly wrong or without evidence to support them. Travis further argues that the trial court ignored his mitigating evidence when fashioning his sentence. We disagree and find that the trial court properly took mitigating evidence into account when determining Travis' sentence.

The standard sentencing guidelines "are not binding on the trial judge; rather, the guidelines are merely a 'tool' to assist the judge in fixing an appropriate punishment." *Belcher v. Commonwealth*, 17 Va. App. 44, 45 (1993). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason*, 69 Va. App. at 99 (quoting *Minh Duy Du*, 292 Va. at 565).

It was within the trial court's purview to weigh Travis' mitigating evidence. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

The record does not support Travis' claim that the trial court did not consider his mitigating evidence in fashioning a sentence. Before pronouncing its sentence, the trial court acknowledged Travis' cooperation with, and great assistance to, the Danville police in several

investigations. The trial court also noted that Travis had taken responsibility for his crimes by pleading guilty. Consequently, the trial court found the mitigating evidence sufficient to downwardly modify Travis' guidelines. Balanced against this mitigating evidence, the trial court found that selling illegal narcotics is harmful to the community. Thus, the record reflects that the trial court considered all the evidence presented, both mitigating and aggravating, before imposing the challenged sentences. Here, Travis' sentences were within the ranges set by the legislature. *See* Code § 18.2-248(C) and 18.2-248(G). Accordingly, we find no abuse of discretion with the trial court's sentencing decision.

III. CONCLUSION

For the foregoing reasons, the trial court's sentence is affirmed.

*Affirmed*.